UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIR H.A.,[1] <br><br> Petitioner, <br><br> v. <br><br> PAMELA BONDI, et al., <br><br> Respondents. | No. 1:26-cv-00503-TLN-SCR <br><br> **ORDER** |

This matter is before the Court on Petitioner Amir H.A.'s ("Petitioner") motion for injunctive relief. (ECF No. 2.) Respondents Pamela Bondi, Kristi Noem, U.S. Department of Homeland Security ("DHS"), Christopher Chestnut, and Sergio Albarran (collectively, "Respondents") filed an opposition. (ECF No. 7.) Petitioner filed a reply. (ECF No. 8.) For the reasons set forth below, Petitioner's motion is GRANTED and the Court issues a preliminary

---

[1]  As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

1  injunction.²

## I. FACTUAL BACKGROUND³

The instant action arises from Petitioner's allegedly unlawful detention. (*See* ECF No. 2-1.) Petitioner is a citizen of Iran and has resided in the United States since August 31, 2001. (*Id.* at 4.) Petitioner was placed in removal proceedings on February 11, 2002, and ordered removed to Iran by an immigration judge on February 10, 2003, after the denial of his applications for asylum, withholding, and protection under the U.N. Convention Against Torture. (*Id.*) The Board of Immigration Appeals ("BIA") dismissed his appeal on June 29, 2024. (*Id.*)

Petitioner sought review with the Ninth Circuit Court of Appeals and his petition for review was dismissed on April 7, 2008, and the mandate issued on May 30, 2008, resulting in a final order of removal. (*Id.*) Petitioner has an approved Form I-130 petition filed by his father and the priority date is current. (*Id.*) He also has an approved Form I-212 waiver, which allows for reapplication for admission into the United States after removal. (*Id.*) Petitioner's Form I-601A waiver is currently pending with the U.S. Citizenship and Immigration Services ("USCIS") and upon approval of this waiver he plans to pursue consular processing. (*Id.*)

On March 29, 2011, U.S. Immigration and Customs Enforcement ("ICE") officers arrested Petitioner and detained him based on his final order of removal. (*Id.*) During his detention, Petitioner cooperated in signing documentation to obtain a travel document and ICE contacted the Islamic Republic of Iran to effectuate his removal. (*Id.*) In May 2011, ICE was informed that an original Iranian birth certificate was required to obtain a travel document. (*Id.*) Subsequently, on July 5, 2011, Petitioner was released from ICE custody given his lack of an original Iranian birth certificate and due to his father's health. (*Id.* at 5–6.)

---

² In their opposition brief, Respondents waived a hearing and stated they have no objection to converting the instant motion into a preliminary injunction. (ECF No. 7 at 3.) The parties have fully briefed the issues and as discussed below, the standard for preliminary injunction and temporary restraining orders are the same. Thus, the Court treats the instant motion as one for preliminary injunction.

³ The instant factual background is taken largely verbatim from Petitioner's brief in support of his motion for injunctive relief. (ECF No. 2.)

2

1    Petitioner was placed on an order of supervision ("OSUP") on July 7, 2011. (*Id.* at 6.)
2    Petitioner complied with all the terms of his release and attended over sixteen check-ins without
3    issue. (*Id.*) Petitioner was re-detained at an ICE check-in on December 30, 2025, in Los
4    Angeles, California. (*Id.*) He was transferred to the California City Corrections Center on
5    January 1, 2026, where he remains detained. (*Id.*)

    Petitioner was provided with a Notice of Revocation of Release ("Notice of Revocation")
7    on December 30, 2025, which states there are "changed circumstances" and the case is under
8    review by Iran for travel documents. (*Id.*) Petitioner was told he was being detained because he
9    had a final order of removal. (*Id.*) Petitioner was not provided with an informational interview or
10   asked if there was any reason he should not be detained or deported. (*Id.*) Petitioner was not
11   made aware of what circumstances had changed in this case, as he continues to lack an original
12   Iranian birth certificate, passport, or national ID card. (*Id.*) The Notice of Revocation says it is
13   signed by a Supervisory Detention and Deportation Officer ("SDDO"), but the name in the
14   signature is not clearly legible. (*Id.*)

15   Petitioner now challenges the lawfulness of his civil detention and seeks release. (*See* ECF
16   Nos. 1, 2, 2-1.)

17       **II.    STANDARD OF LAW**

18   A preliminary injunction is an extraordinary remedy. Courts consider whether a petitioner
19   has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer
20   irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his
21   favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*,
22   555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test.
23   *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

24   In evaluating a petitioner's motion, a district court may weigh a petitioner's showings on
25   the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the
26   hardships may support issuing a preliminary injunction even where there are "serious questions
27   on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable
28   injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must

demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a preliminary injunction. *Id.* at 1134–35.

**III.   ANALYSIS**

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

A.   Likelihood of Success on the Merits

Petitioner argues Respondents revoked Petitioner's OSUP in violation of procedural due process requirements because they failed to establish changed circumstances prior to detention and failed to provide Petitioner with notice of the reasons for revocation, both in violation of 8 C.F.R. § 241.13.[4]  (ECF No. 2-1 at 8–16.)  The Court turns to a discussion of these claims.

Respondents have the authority to detain noncitizens with final orders of removal to effectuate deportation.  *See* 8 U.S.C. § 1231; *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001).  But when a noncitizen has been released from immigration detention, certain ICE regulations govern how and when the agency may revoke that release and re-detain the noncitizen.  *See* 8 C.F.R. §§ 241.13(i), 241.4(l) ("ICE Regulations").  These procedures protect important due process rights owed to noncitizens.[5]  *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution").

"ICE, like any agency, 'has the duty to follow its own federal regulations.'"  *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)

---

[4]   Petitioner also argues he is likely to succeed on his claim that the SDDO that revoked Petitioner's OSUP violated the procedures in 8 C.F.R. § 241.13.  (ECF No. 2-1 at 9–12, 15–16.)  As Petitioner already establishes a likelihood of success on the merits on the claims above, the Court need not and does not consider this argument.

[5]   It is fundamental that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693 (citing *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596–598 & n.5 (1953); *Yick Wo v. Hopkins*, 118 U.S. 356, 369, (1886); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)).

1  (reversing dismissal of habeas petition where BIA failed to follow its own regulations). "Where
2  an immigration 'regulation is promulgated to protect a fundamental right derived from the
3  Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it,
4  the challenged [action] is invalid." *Rombot*, 296 F. Supp. 3d at 388 (quoting *Waldron v. I.N.S.*,
5  17 F.3d 511, 518 (2d Cir. 1993)); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL
6  1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that ICE Regulations
7  were followed . . . [petitioner's] re-detainment was unlawful.").

8      Petitioner's revocation of release was governed by 8 C.F.R. § 241.13(i). (*See* ECF No. 2-
9  1 at 9.)  In considering Petitioner's claim that Respondents failed to comply with ICE
10 Regulations thereby violating due process, the Court assesses 8 C.F.R. § 241.13(i)(2)
11 (determination requirements) and 8 C.F.R. § 241.13(i)(3) (procedures) in turn.

12           *a)*   *Determination to Revoke Release Under 8 C.F.R. § 241.13(i)(2)*

13     Under the ICE Regulations governing revocation of release, ICE may re-detain
14 noncitizens "if, on account of changed circumstances, [ICE] determines that there is a significant
15 likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. §
16 241.13(i)(2).  The "on account of" language means that the "changed circumstances" are a
17 prerequisite to revocation.  *Id.*; *see also Tran v. Noem*, No. 25-cv-2391, 2025 WL 3005347, at *2
18 (S.D. Cal. Oct. 27, 2025) ("§ 241.13(i)(2) requires that this determination is made *before* the
19 removable [noncitizen] has had his release revoked.") (emphasis added).  "Significant likelihood"
20 requires something more than a mere possibility.  *See Vu v. Noem*, No. 1:25-cv-01366-KES-SKO,
21 2025 WL 3114341, at *7 (E.D. Cal. Nov. 6, 2025).

22     The burden is on ICE to first establish changed circumstances that make removal
23 significantly likely.  *See Vu*, 2025 WL 3114341, at *7; *see also Escalante v. Noem*, No. 9:25-cv-
24 00182, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("Imposing the burden of proof on [a
25 noncitizen] each time he is re-detained would lead to an unjust result and serious due process
26 implications.").

27     As an initial matter, it appears that ICE has failed to meet its burden to show that
28 Petitioner's revocation of release was proper "on account of changed circumstances."  *See* 8

C.F.R. § 241.13(i)(2).  Respondents do not directly address this requirement in their opposition.  (*See* ECF No. 7.)  Petitioner submits a declaration in which he avers that the Notice of Revocation states there are "changed circumstances" in his case.  (ECF No. 2-2 at 2.)  However, Petitioner notes that it is a "bare statement" that does not state reasons or the facts underlying the determination.  (ECF No. 2-1 at 10.)  Neither have Respondents identified any event or fact to infer that Petitioner's circumstances changed between his release on July 5, 2011, and the revocation on December 30, 2025.

The only new facts Respondents present are that immigration authorities have interviewed Petitioner, completed his removal paperwork, and "will submit that completed travel packet to the Iranian government to effectuate his removal as soon as tomorrow."  (ECF No. 7 at 2–3.)  Even if submitting a travel packet within the Government gave rise to "changed circumstances" sufficient to revoke release, ICE plans to submit the travel packet *after* Petitioner's release was revoked.  It is not possible that the submission of a travel packet at the end of January 2026 could possibly be the prerequisite for re-detention on December 30, 2025.  Without any other facts to rely on, this Court must find that there were no changed circumstances in Petitioner's case to warrant the revocation of his release under ICE Regulations.  8 C.F.R. § 241.13(i)(2).  Thus, ICE improperly revoked Petitioner's release.

ICE has also failed to meet its burden to show that Petitioner's deportation is significantly likely in the reasonably foreseeable future.  8 C.F.R. § 241.13(i)(2) (showing required under ICE Regulations to properly revoke release).  Petitioner notes that his case is under review by Iran for travel documents, and he was previously released in 2011 because of Respondents' inability to obtain travel documents at that time due to lack of an original birth certificate.  (ECF No. 2-1 at 10–11.)  Petitioner contends he still lacks an original Iranian birth certificate, passport, or national identification and therefore Respondents are unable to establish removal in the reasonably foreseeable future.  (*Id.* at 11–12.)  Respondents argue "there is a significant likelihood of [Petitioner's] removal in the foreseeable future" and again seem to rely only on the submitted travel packet to meet their burden — which had not yet been submitted at the time Respondents filed their opposition.  (ECF No. 7 at 2–3.)  The Court cannot glean any other basis from

1  Respondents' brief or evidence to support the likelihood of removal. While submission of the
2  travel packet may nominally increase the likelihood of Petitioner's removal now, as stated above,
3  it could not have possibly supported an agency determination at the time Petitioner's release was
4  revoked on December 30, 2025.

5  Even if the travel packet had been submitted at the time of Petitioner's re-detention —
6  rather than a month after the fact — it is not sufficient to show a significant likelihood that
7  removal is reasonably foreseeable. Respondents do not provide any evidence that the request for
8  travel documents has even been submitted to Iran nor that Iran has agreed to accept Petitioner.
9  Respondents also do not provide an estimate of when Iran might respond or issue travel
10 documents. Further, Respondents have not provided any evidence of progress after possible
11 submission of the travel packet. At this stage, Petitioner's removal is nothing more than a mere
12 possibility. *See Vu*, 2025 WL 3114341, at *7.

13 ICE did not make the requisite sufficient showing that Petitioner's removal was
14 significantly likely in the foreseeable future based on changed circumstances at the time they
15 revoked his release under 8 C.F.R. § 241.13(i)(2). Accordingly, the Court finds that ICE
16 improperly revoked Petitioner's release in violation of its own regulations and due process.

        b) *Procedures to Revoke Release Under 8 C.F.R. § 241.13(i)(3)*

18 The ICE Regulations also lay out procedures for revocation of release. 8 C.F.R.
19 § 241.13(i)(3). ICE must provide notice to the noncitizen of the reasons for revocation, "conduct
20 an initial informal interview promptly after his or her return to [ICE] custody to afford the
21 [noncitizen] an opportunity to respond to the reasons for revocation[,]" and provide review of the
22 determination. *Id.*

23 Petitioner alleges that ICE did not follow these procedures. (ECF No. 2-1 at 12–15.)
24 Respondents do not squarely address whether ICE complied with its regulations, but they do state
25 immigration authorities "interviewed" Petitioner. (ECF No. 7 at 2.) Respondents do not even
26 provide the Court with ICE's Notice of Revocation.[6] The mandated "initial informal interview"

---

6 Petitioner describes the notice as "simply stat[ing] there are 'changed circumstances' and that the case is under review by Iran for travel documents." (ECF No. 2-1 at 6.) The Court is

1   is required to be conducted "promptly" upon Petitioner's re-detention.  Based on the current
2   record, the Court cannot ascertain when this interview occurred and whether it was before or after
3   Petitioner's release was revoked.  If the interview occurred long after Petitioner's re-detention,
4   then ICE has seriously violated its procedures for revocation.  *See Phan*, No. 2025 WL 1993735,
5   at * 3–4 (failure to provide informal interview rendered revocation of release unlawful).  Thus, on
6   the facts currently before this Court, Petitioner raises serious questions going to the merits of his
7   claim that ICE also failed to follow 8 C.F.R. § 241.13(i)(3) for the revocation of his release.

### B.   Irreparable Harm

The Ninth Circuit has recognized that there may be numerous "irreparable harms imposed on anyone subject to immigration detention," such as "subpar medical and psychiatric care in ICE detention facilities [and] the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions,* 872 F.3d 976, 999 (9th Cir. 2017).  This Court has found that Petitioner's removal is not reasonably foreseeable.  Therefore, Petitioner is being unlawfully detained and risks indeterminate detention absent a preliminary injunction.  Further, the Court finds persuasive Petitioner's arguments that he has lived in the United States for 25 years, he has strong family ties, and this unlawful detention is preventing him from visiting his elderly parents, raising his partner's daughter, and earning a living to support his family. (ECF No. 2-1 at 17–18.) Thus, the Court finds Petitioner has suffered irreparable harm.

### C.   Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  Further, "[the government] cannot suffer harm from an injunction that merely ends an unlawful practice[.]" *Rodriguez v. Robbins*, 715 F. 3d 1127, 1145 (9th Cir. 2013).  The

---

troubled by the conclusory and generic "reasons" ICE provided in its Notice of Revocation and is skeptical the notice is sufficient to inform Petitioner in a way that he may meaningfully respond. *See also Nguyen*, 788 F. Supp. 3d at 150 (finding same form reasons conclusory and insufficient to show changed circumstances); *Duong v. Charles*, No. 1:25-cv-01375-SKO, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025) (conclusory reasons in notice insufficient to comply with due process requirements).

8

public also has a strong interest in ensuring its government follows the law and the Ninth Circuit has recognized that the "costs to the public of immigration detention are staggering[.]" *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017).  As discussed above, Petitioner has shown he is likely to succeed in proving that Respondents have violated federal laws depriving him of his liberty.  Thus, the balance of equities and public interest factors weigh in Petitioner's favor.

Because all the *Winter* factors weigh in Petitioner's favor, the Court GRANTS Petitioner's motion and issues a preliminary injunction ordering Petitioner's immediate release on the same terms as he was released previously on his July 7, 2011 order of supervision. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

### IV.   CONCLUSION

Therefore, the Court GRANTS Petitioner's motion and issues the PRELIMINARY INJUNCTION set forth below.  IT IS HEREBY ORDERED that:

1. Petitioner's motion for injunctive relief (ECF No. 2) is GRANTED;

2. Respondents must IMMEDIATELY RELEASE Petitioner under the same conditions he was released prior to his detention. **Respondents must file a notice certifying compliance with this provision of the Court's Order by February 13, 2026**;

3. Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner unless they obtain a travel document for his removal to Iran and until they follow all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures;

4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).  Courts regularly waive security in cases like this one. *See, e.g.*, *Zakzouk v. Becerra*, No. 25-cv-06254, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025); and

5. This matter is referred to the United States Magistrate Judge for further proceedings.

1 |       IT IS SO ORDERED.

2 | Date: February 12, 2026

 

                                                _____
                                                TROY L. NUNLEY
                                                CHIEF UNITED STATES DISTRICT JUDGE